UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JEAN C. CANTAVE,

                Plaintiff,

        -against-

NEW YORK CITY POLICE OFFICERS ("Dept"),
MICHAEL FAILLA (Detective Investigator of the
113th Precinct, Shield No. 3446, FRANK
DEGAETANO (Assistant District Attorney for the
Special Victims Bureau in and for the
County of Queens),

                Defendants.
-------------------------------------------------------------------x

**NOT FOR PUBLICATION**
**MEMORANDUM & ORDER**
09-CV-2226 (CBA) (LB)

AMON, United States District Judge.

    Plaintiff Jean C. Cantave ("Cantave" or "plaintiff"), who is proceeding *pro se*, has filed

suit alleging violations of his constitutional rights based on the events surrounding his November

19, 2007 arrest. As plaintiff seeks money damages as a result of the alleged constitutional

violations, the Court construes plaintiff's claims as being brought pursuant to 42 U.S.C. § 1983.

Defendants, Detective Michael Failla ("Failla") and Assistant District Attorney ("ADA") Frank

Degaetano ("Degaetano" and together "defendants"), now move for summary judgment.[1] For

the reasons stated herein, the Court grants the motion in its entirety.

## I.    Summary and Background

    On November 5, 2007, plaintiff was involved in an altercation with Andre Elbreisus

("Elbreisus"), a former employee of the plaintiff. Plaintiff alleges that the altercation was

---

[1] Plaintiff names as a defendant in the caption of the complaint, "New York City Police Officers (Dept.)." No additional officers were ever served. To the extent the Court could construe the named defendant as the New York City Police Department ("NYPD"), the NYPD is not a suable entity. See Morris v. N.Y.P.D., 59 Fed. App'x 421, 422 (2d Cir. 2003) ("[P]laintiff's claims against the New York City Police Department ("NYPD") must be dismissed because it is not a suable entity. . . ."); Bailey v. New York City Police Dep't, 910 F. Supp. 116, 117 (E.D.N.Y. 1996) (recognizing that the NYPD is an agency of New York City and cannot be sued independently under § 1983). Any potential claims against the City of New York are discussed in the body of the decision.

initiated by Elbreisus, and that during the fight Elbreisus struck him three times with a gun. (Myerberg Decl., Ex. B, at 52.) Plaintiff admits that at some point during the fight, he bit Elbreisus's ear. (Id.) After the altercation, plaintiff states that he was taken to the hospital. (Id. at 47.) Elbreisus also went to the hospital where he underwent surgery on his damaged ear. (Id., Ex. H.)

Both plaintiff and Elbreisus filed complaints with the NYPD. (Id., Ex. B, at 54, Ex. G.) Plaintiff states that he was interviewed by Detective Failla on November 8, 2007. On November 9, 2007, two police officers went to the plaintiff's place of business to interview the plaintiff. (Id., Ex. H). The events of that encounter are disputed. Plaintiff alleges that the officers yelled at his customers, pushed him against a fence, and took property from him including a "dealership license, books and business records, pictures, money, personal identification, and . . . a car." (Complaint at 3A.) It is undisputed that a motor vehicle was removed from plaintiff's place of business by the officers. (Def. 56.1 Stmt at ¶ 9.) The vehicle was vouchered and returned to its owner. (Myerberg Decl., Ex. H; Complaint at 3A.)

In plaintiff's "Affirmation and Memorandum of Law in Support of the Request Defendant's Motion for Summary Judgment and Other Relief be Denied" ("Plaintiff's Memorandum"), plaintiff claims that in addition to the property described, he lost, "at least 'twenty-two' automobiles such as the likes of a 'Mercedes Benz, Ford E[x]pedition, a c[o]uple of Hondas (A[]curas), a . . . couple of Toyota Cam[]rys, [and] two Dodge [I]ntrepids.'" Plaintiff states that he also lost, "personal and irreplaceable items such as a sentimental 'photographs' of plaintiff's family, money . . . per[s]onal identification cards, his car dealer[ship] licenses that [were] affixed to the walls of plaintiff's business, items of clothing, [a] laptop computer, [cellular] telephone, radio, television set, and basically 'everything' that was not nailed down."

2

On November 19, 2007, plaintiff was arrested as he exited court following an appearance on an unrelated matter. (Myerberg Decl., Ex. B, 75-76, Ex. C.) In the Criminal Court Complaint, plaintiff was charged with Assault in the Second Degree, N.Y. Penal Law § 120.05, and Harassment in the Second Degree, N.Y. Penal Law § 240.26(1). (Id., Ex D.) Plaintiff was apparently indicted on two counts, Assault in the Second Degree and Assault in the Third Degree, N.Y. Penal Law § 120.00. (Id., Ex. E, at 9-10.) After a jury trial, plaintiff was convicted of third-degree assault but acquitted of second-degree assault. (Id., Ex. E, at 240.) Plaintiff filed this action on May 22, 2009.

## II.     Summary Judgment Standard

Defendants move for summary judgment, seeking dismissal of the amended complaint in full. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 23 (1986); Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999). The Court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue to be tried. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The court is required to view the evidence in the light most favorable to the nonmoving party. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Nevertheless, the non-moving party cannot rest on mere allegations or denials but must instead set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Nat'l Westminster Bank USA v. Ross, 676 F. Supp. 48, 51 (S.D.N.Y. 1987) ("[S]peculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact."). No genuine issue exists unless there is

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-50 (citations omitted).

## III. Federal Law Claims Against Individual Defendants

The Court construes the complaint as raising claims under 42 U.S.C. § 1983. In order to maintain an action pursuant to § 1983, a plaintiff must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id. "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)).

### A. False Arrest

Plaintiff arguably raises a claim for false arrest against Detective Failla. A § 1983 claim for false arrest, based on an individual's right to be free from unreasonable seizures, is substantially the same as a claim for false arrest under New York law. Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted). False arrest is a "species" of false imprisonment, and requires proof of the same four elements. See Weyant v. Okst, 101 F.3d 845, 853 (2d Cir. 1996); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995); Benjamin v. United States, 554 F. Supp. 82, 85 (E.D.N.Y. 1982) (citing Jackson v. Police Dep't, 86 A.D.2d 860 (App. Div. 1982)). To state a

4

claim of false arrest, as for a claim of false imprisonment, a plaintiff must show: (1) that the defendant intended to confine the plaintiff, (2) that the plaintiff was conscious of the confinement, (3) that the plaintiff did not consent to the confinement, and (4) that the confinement was not otherwise privileged. Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003).

Even where a plaintiff proves all of the required elements, the claim will nevertheless fail where there was probable cause for the arrest. Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) ("[T]he existence of probable cause is an absolute defense to a false arrest claim."); Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir. 2002); see also Singer, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). Probable cause requires an officer to have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (citation omitted). Probable cause is to be analyzed from an objective perspective, Lindsey v. Loughlin, 616 F. Supp. 449, 451 (E.D.N.Y. 1985) (citing Harlow v. Fitzgerald, 457 U.S. 800 (1982)), in light of the "totality of the circumstances." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006). Therefore, the actual motivation of the arresting officer is irrelevant. See Whren v. United States, 517 U.S. 806, 813-14 (1996).

Detective Failla had probable cause to arrest the plaintiff. "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (citations and internal quotation marks omitted); see also Singer, 63 F.3d at 119 (2d Cir. 1995) ("An arresting officer

5

advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."); Thomas v. County of Putnam, 262 F. Supp. 2d 241, 247 (S.D.N.Y. 2003). The veracity of those individuals "who are the victims of the very crime they report to the police is assumed." Miloslavsky v. AES Engineering Soc., Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992) aff'd, 993 F.2d 1534 (2d Cir. 1993); see also Martinez, 202 F.3d at 634; Parisi v. Suffolk County, No. 04-CV-2187 (ENV)(ETB), 2009 WL 4405488, at *7 (E.D.N.Y. Nov. 30, 2009) ("[T]he probable cause standard does not require that the arresting officer affirmatively seek out reasons to doubt the victim or witness where none are apparent.").

Here, Detective Failla received a complaint from Elbreisus, in which Elbreisus stated that he and plaintiff were in an altercation, and that during that altercation Elbreisus sustained a serious bite to his ear requiring surgery. Plaintiff does not deny that the altercation took place or that he bit Elbreisus's ear. (Myerberg Decl., Ex. B, at 52.) Instead, plaintiff appears to argue that he should not have been arrested because the fight was initiated by Elbreisus. Once the evidence establishes probable cause, however, an officer is not required to continue investigating, sifting and weighing information, nor is an officer obligated to investigate the suspect's plausible claims of innocence. See Panetta v. Crowley, 460 F.3d 388, 396-98 (2d Cir. 2006). Thus, in Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2001), the Second Circuit Court of Appeals held that when a purported assault victim who was visibly injured told a police officer that a § 1983 plaintiff had assaulted him, the officer had probable cause to arrest the plaintiff, despite the plaintiff's conflicting account of the altercation. Id. at 70. Based on the undisputed facts, therefore, Detective Failla had probable cause to arrest Cantave.

Additionally, "a conviction of the plaintiff following the arrest is viewed as establishing the existence of probable cause." Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986); see also Barmapov v. Barry, No. 09-CV-03390 (RRM)(RML), 2011 WL 32371, at *4 (E.D.N.Y. Jan. 5, 2011) ("In the Second Circuit, an uncontroverted conviction for the crime of arrest is conclusive evidence that the arresting officer had probable cause to make the arrest."); Walker v. Youman, No. 02-CV-5957 (NGG), 2006 WL 525921, at *4 (E.D.N.Y. Mar. 3, 2006) ("When a Section 1983 plaintiff is convicted after trial on the underlying charge, these facts alone provide sufficient evidence that probable cause existed at the time of the arrest and preclude a false arrest claim under Section 1983." (internal citation omitted)); Broughton v. State of New York, 37 N.Y.2d 451, 458 (1975) ("[A] conviction which survives appeal would be conclusive evidence of probable cause.").

Here, plaintiff was convicted of third-degree assault, but acquitted of second-degree assault. However, the fact that plaintiff was not convicted of all the crimes for which he was arrested does not negate probable cause. E.g. Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." (citing Devenpeck v. Alford, 543 U.S. 146 (2004))); see also DeVito v. Barrant, No. 03-CV-1927 (DLI), 2005 WL 2033722, at *4 (E.D.N.Y. Aug.23, 2005) (barring § 1983 false arrest claim where probable cause existed for arrest, as exhibited by plaintiff's conviction, and rejecting plaintiff's argument that false arrest claim could be brought regarding other charges for which he was not convicted). Accordingly, summary judgment is granted for Detective Failla on any claim for false arrest.

## B. **Malicious Prosecution**

Plaintiff also arguably raises a claim for malicious prosecution. Like a claim for false arrest, the elements of a claim for malicious prosecution pursuant to 42 U.S.C. § 1983 are "substantially the same as the elements under New York law." Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003); see also Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003). Thus, under both state and federal law, to state a claim for malicious prosecution, a plaintiff must prove four elements: (1) that the defendant initiated a criminal proceeding, (2) that the proceeding terminated favorably to the plaintiff, (3) that there was no probable cause for the criminal charge, and (4) that the defendant acted maliciously. Rothstein v. Carriere, 373 F.3d 275, 282 (2d Cir. 2004) (citing cases).

Defendants argue that plaintiff cannot satisfy the second element because plaintiff's conviction for third degree assault demonstrates that the proceedings were not terminated favorably to the plaintiff. However, "in contrast to the analysis of false arrest claims . . . the Second Circuit has noted that a conviction on one claim does not necessarily absolve liability under § 1983 for malicious prosecution as to other criminal charges which were resolved favorably to plaintiff." Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 335-36 (E.D.N.Y. 2006) (citing Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991) (highlighting "the need to separately analyze the charges claimed to have been maliciously prosecuted"); Janetka v. Dabe, 892 F.2d 187, 190 (2d Cir. 1989) (finding claim of malicious prosecution on charge of resisting arrest, of which plaintiff was acquitted, was not barred by his conviction for disorderly conduct)). Plaintiff was acquitted of second degree assault. (Myerberg Decl., Ex. E, at 240.)

To determine whether a conviction on one count is dispositive as to others, a court will "analyze a number of factors, including the relative seriousness of the two offenses, 'whether the

8

elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged actions were directed at different people.'" Flores v. Levy, No. 07-CV-3753 (JFB)(WDW), 2008 WL 4394681, at *6 (E.D.N.Y. Sept. 23, 2008) (quoting Pichardo v. N.Y. Police Dep't., No. 98-CV-429 (DLC), 1998 WL 812049, at *3 (S.D.N.Y. Nov. 18, 1998)); see also Ostroski v. Town of Southold, 443 F. Supp. 2d 325, 335-40 (E.D.N.Y. 2006) (discussing factors). In Pichardo, 1998 WL 812049, at *4, the court found that a conviction on a misdemeanor assault charge precluded a claim for malicious prosecution based on a count of felony assault arising out of the same incident. Similarly, in Flores, 2008 WL 4394681, at *6 n.6, the court found that a conviction on second degree assault precluded a malicious prosecution claim on an acquitted charge of first degree assault, again arising from same incident.

In this case, both assault charges arose out of the same altercation, and the only important distinction between the two offenses, as charged, regards the seriousness of the injury in question. Although assault in the second degree is a felony while assault in the third degree is a misdemeanor, as in Pichardo, the Court finds that the acquitted charges are "so closely intertwined with the offense of conviction that there is no reasonable basis to conclude that the acquittal on [the felony] charges is sufficiently distinct to support a claim of malicious prosecution." 1998 WL 812049, at *4.[2] Accordingly, summary judgment is granted in favor of the defendants as to any claim for malicious prosecution.

---

[2] The Criminal Court complaint also charged plaintiff with harassment in the second degree, N.Y. Penal Law 240.26(1) ("A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person . . . he or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or attempts or threatens to do the same.") It is unclear at what point that count was dropped from the prosecution; however, as second-degree harassment is a violation, and thus the penalty that can be imposed is less serious than under the misdemeanor for which the plaintiff was convicted, and its elements are largely encompassed by third-degree assault, the Court finds that the charge is not sufficiently distinct to support an allegation of malicious prosecution in this case.

## C. **Equal Protection**

To the extent the complaint is read to raise an equal protection claim, summary judgment is granted in favor of the defendants. Plaintiff appears to argue that the defendants violated his rights by making "no arrest of certain individuals," presumably Elbreisus, while arresting and prosecuting the plaintiff. In order to establish a violation of equal protection based upon selective treatment or prosecution, a plaintiff must show that he or she was: (1) selectively treated as compared with others similarly situated, and (2) that such selective treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Latrieste Restaurant & Cabaret Inc. v. Village of Port Chester, 40 F.3d 587, 590 (2d Cir. 1994). The key issue in an equal protection claim alleging selective prosecution is impermissible motive. Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 17 (2d Cir. 1999).

Here, as to the first element, it appears that Elbreisus was in fact arrested; though, his case was ultimately dismissed. (Myerberg Decl., Ex. E, at 152-53.) The parties do not discuss the reason for the dismissal, and so assuming the facts in the light most favorable to the plaintiff, the Court will not rely on the argument that the two were in fact treated similarly. As to the second element, however, plaintiff has made no showing of impermissible motive. Plaintiff's accusations regarding discrimination on the basis of race, religion, or gender are entirely unsubstantiated and conclusory. See Catanzaro v. Weiden, 188 F.3d 56, 64-65 (2d Cir. 1999); Celestin v. City of New York, 581 F. Supp. 2d 420, 432 (E.D.N.Y. 2008). Both plaintiff and Elbreisus are African American males of Haitian descent, and there is no evidence in the record that the officers were even aware of either individual's religion. (Myerberg Decl., Exs. B, at 100, C.)

Plaintiff cites Myers v. County of Orange, 157 F.3d 66 (2d Cir. 1998), to support his claim of an equal protection violation; however, that case is distinguishable. In Myers, the plaintiff showed that the defendant, County of Orange, had a "first-come first-served" complaint policy by which the earlier filed of two cross-complaints would receive preference over the later-filed complaint. Id. at 73. The court found that such a policy would violate the plaintiff's right to equal protection because it distinguished between two similarly-situated individuals in a way that bore "no rational relationship to the legitimate governmental interest in impartial law enforcement." Id. at 76. Here, plaintiff has made no showing that the defendants acted in accordance with a policy favoring a first-filed complaint or, indeed, any other policy that can be evaluated on the basis of its relationship to a legitimate governmental interest. Accordingly, summary judgment is granted in favor of the defendants as to any equal protection claims.

### D. **Deprivation of Property**

Plaintiff alleges that two unidentified police officers took various property from his place of business, specifically a "dealership license, books and business records, pictures, money, personal identification, and . . . a car." In plaintiff's "Affirmation and Memorandum of Law," plaintiff now claims that he lost additional property, including, "at least 'twenty-two' automobiles such as the likes of a 'Mercedes Benz, Ford E[x]pedition, a c[o]uple of Hondas (A[]curas), a . . . couple of Toyota Cam[]rys, [and] two Dodge [I]ntrepids.'" He states that he also lost, "personal and irreplaceable items such as a sentimental 'photographs' of plaintiff's family, money . . . per[s]onal identification cards, his car dealer[ship] licenses that [were] affixed to the walls of plaintiff's business, items of clothing, [a] laptop computer, [cellular] telephone, radio, television set, and basically 'everything' that was not nailed down . . . ."[3]

---

[3] Plaintiff's belated allegations about the loss of around 22 automobiles suggest that rather than alleging the police officers actually confiscated his property, he is instead seeking to hold them liable for failing to protect his property

As for the car described in the complaint, defendants have submitted a property voucher prepared on November 9, 2007 for the automobile in question (Myerberg Decl., Ex. I), and plaintiff does not dispute that the car was ultimately returned. (Id., Ex. B, at 68.) As for the additional property, to the extent the court incorporates such alleged loss as part of the complaint, plaintiff does not provide any evidence or allege any facts suggesting that either of the two named defendants were involved in the loss. On the contrary, plaintiff states that the loss was caused by two unnamed police officers. Any claim that Detective Failla failed to intervene in order to prevent plaintiff's loss is analyzed below. Accordingly, plaintiff's claims regarding the alleged deprivation of his property by the named defendants are dismissed.

As for the unnamed police officers, plaintiff cannot maintain a cause of action for deprivation of property without due process of law under § 1983. As stated, these officers have never been identified or served. In a December 2, 2009 Order, Magistrate Judge Lois Bloom set a January 4, 2010 deadline for any request to amend the complaint, including any request to join other parties. No such request was filed within the time allotted.

Moreover, "[d]eprivation of property by a state actor, whether intentional or negligent, does not give rise to a claim under § 1983 so long as the law of that state provides for an adequate post-deprivation remedy and the deprivation was the result of a 'random and

---

from theft or other loss to non-defendants after his arrest. The Due Process Clause "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 196 (1989). Exceptions to the general rule exist where the state has a "special relationship" with an individual, for example where an individual is in custody of the state and is subjected to private violence, or where agents of the state "in some way had assisted in creating or increasing the danger to the victim." Matican v. City of New York, 524 F.3d 151 (2d Cir. 2008) (quoting Dwares v. City of New York, 985 F.2d 94, 98-99 (2d Cir.1993)). Plaintiff has not alleged sufficient facts to make out a claim based on the failure to prevent his property loss. Plaintiff was arrested as he was leaving court on an unrelated matter. Presumably plaintiff was in the best position to secure his property before leaving court. He does not allege that he informed the arresting officers or others that he had left his property unsecured. Nor does he allege that any officers assured him they would secure the property. Moreover, neither the complaint nor the subsequent allegations clarify when the additional cars and other property were taken or by whom. Accordingly, any claims arising from the failure to prevent plaintiff's property loss following his arrest are dismissed.

unauthorized' act." <u>Dove v. City of New York</u>, No. 99CIV3020DC, 2000 WL 342682, at *3 (S.D.N.Y. March 30, 2000) (citing <u>Butler v. Castro</u>, 896 F.2d 698, 700 (2d Cir. 1990) (adequate post-deprivation remedy is defense to § 1983 claim based on "random and unauthorized" deprivation but not to claim "where the deprivation complained of results from the operation of established state procedures")); <u>see also</u> <u>Hudson v. Palmer</u>, 468 U.S. 517, 533 (1984) (intentional deprivation of property not actionable under § 1983 if meaningful post-deprivation remedy available under state law); <u>Parratt v. Taylor</u>, 451 U.S. 527, 542-43 (1981) (negligent deprivation of property not actionable under § 1983 where post-deprivation remedy available), overruled on other grounds by <u>Daniels v. Williams</u>, 474 U.S. 327 (1986).

Where loss of property was "random and unauthorized," courts have found that "New York provides an adequate post-deprivation remedy in the form of state law causes of action for negligence, replevin, or conversion . . . ." <u>Dove v. City of New York</u>, No. 99CIV3020DC, 2000 WL 342682, at *3 (S.D.N.Y. March 30, 2000); <u>see also</u> <u>Mejia v. New York City Dep't of Corrections</u>, No. 96 CV 2306, 1999 WL 138306, at *4 (E.D.N .Y. Mar. 5, 1999) (availability of state law negligence, replevin, or conversion claims defeats § 1983 action for loss of property); <u>Cook v. City of New York</u>, 607 F. Supp. 702, 704 (S.D.N.Y. 1985) (same). As plaintiff admits, the car noted in the complaint was vouchered and returned. As to the other property, plaintiff has not alleged any facts suggesting that any confiscation of property was other than "random or unauthorized." Accordingly, the Court finds that plaintiff cannot maintain a claim of a due process violation based on his alleged loss of property.

To the extent that the Court construes plaintiff's claims as arising under state law, those claims are dismissed as well. Plaintiff has not filed a notice of claim. As explained more fully below, filing a notice of claim is a mandatory condition precedent to suit against New York City

13

and its employees, and failure to comply with this condition is grounds for dismissing a state law cause of action. See Burks v. Nassau County Sheriff's Dept., 288 F. Supp. 2d 298, 301 (E.D.N.Y. 2003). Moreover, the statute of limitations has run on any state law claims against the unnamed defendants based on plaintiff's alleged loss of property. Under N.Y. Gen. Mun. Law §§ 50-e & 50-i, plaintiff was required to file his complaint within one year and ninety days from the date the cause of action accrued. Plaintiff appears to allege that the unnamed defendants confiscated his property on November 9, 2007. Accordingly, plaintiff was required to file his complaint by February 7, 2009. Plaintiff did not file his complaint until May 22, 2009. Moreover, nearly two years have passed since the complaint was filed, and to date plaintiff has not moved to amend the complaint to name any additional defendants. Any state law cause of action against the unnamed police officer defendants based on the alleged deprivation of property is therefore dismissed.

E. **Excessive Force**

Plaintiff does not make any allegations regarding excessive force in his complaint. However, at his deposition, plaintiff claimed that on November 9, 2007, three officers came to his place of business, pushed him, and caused him to hit his head. (Myerberg Decl., Ex. B, at 61-62.). Plaintiff does not allege that either Detective Failla or ADA Degaetano was present at the incident. (Id.) Any claims of excessive force against Detective Failla and ADA Degaetano are therefore dismissed.

At his deposition, plaintiff identified an "Officer Steven," and two unnamed police officers as the officers involved in the alleged incident. "Officer Steven" was not named in the complaint, and Detective Failla was the only officer ever served with process.[4] The body of the

---

[4] Under Fed. R. Civ. P. 4(m), plaintiff is required to serve a defendant with a summons and a copy of the complaint within 120 days of filing the complaint. See, e.g., Watkins v. Doe, No. 04 Civ. 0138, 2006 WL 648022, at *7

complaint names a single "John Doe" police officer as a defendant. The incident in question allegedly occurred on November 9, 2007. As stated, in a December 2, 2009 Order, Magistrate Judge Lois Bloom set a January 4, 2010 deadline for any request to amend the complaint, including any request to join other parties. Since filing his complaint in May 2009, plaintiff has not sought to amend, either to add allegations of excessive force or to name the "John Doe" officers. New York law supplies the applicable statute of limitations periods, which is three years for § 1983 claims. See Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994). Accordingly, any claim for excessive force against the "John Doe" officers is dismissed as time-barred. See, e.g., Vineyard v. County of Nassau, 329 F. Supp. 2d 364, 368-69 (E.D.N.Y. 2004) (amendment to identify names of originally sued "John Doe" police officers did not relate back to original complaint and were, therefore, time-barred); Sepulveda v. New York, No. 01cv3117 (GBD), 2003 WL 22052870, at *3 (Sept. 2, 2003) (same).

### F. Failure to Intervene

Plaintiff alleges that Detective Failla "is liable to plaintiff in his failure to protect plaintiff from the continued harassment and the taking of plaintiff's personal property when plaintiff had repeatedly told defendant Michael Failla of the reoccurring events by fellow police officers from the same precinct."

"An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted). However, liability may attach only when, "(1) the officer

---

(S.D.N.Y. March 14, 2006) (dismissing claims against "John Doe" police officers for failure to serve within 120 days). It has now been nearly two years since the complaint was filed.

had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)); Ricciuti v. New York City Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997)). "[A] police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known." Ricciuti, 124 F.3d at 129.

Here, Detective Failla cannot be found liable for any of the alleged actions by other officers. First, it is not clear from the face of the complaint of what harassment the plaintiff complains. After the altercation between plaintiff and Elbreisus, plaintiff alleges that he was visited by the police on only two occasions. The first, which apparently took place on November 8, 2007, was a visit by Detective Failla himself. Plaintiff does not allege that any harassment occurred at that meeting. Plaintiff was next visited on November 9, 2007 by two officers who plaintiff alleges yelled at his customers, pushed him against a fence, and took his property. In raising a claim based of Detective Failla's alleged failure to intervene, the Court assumes plaintiff is referring to the second incident in which two officers came to his place of business.

However, plaintiff never states what steps Detective Failla could have taken to protect plaintiff from the officers in question. Detective Failla was not present at the incident, and there is no indication of how he could have known about it at the time, let alone prevented it. There is also no evidence or even an allegation that Detective Failla had supervisory responsibility over the individuals in question or that he could have taken any action to stop the alleged harassment. To the extent the alleged failure to intervene is based on plaintiff's allegations that the officers

took his property, plaintiff cannot prove that such depravation rose to the level of a constitutional violation. Finally, to the extent that the harassment in question is based not on the November 9, 2007 incident, but on plaintiff's arrest and prosecution, those claims are addressed with respect to false arrest and malicious prosecution.

G. **First Amendment Violations**

Plaintiff alleges that defendants violated his first amendment rights. Plaintiff nowhere alleges how such rights were violated, and neither party addresses these claims in their papers. As the Court may *sua sponte* dismiss any part of a complaint filed by a plaintiff proceeding *in forma pauperis* that fails to state a claim upon which relief may be granted, and as plaintiff has had ample opportunity to amend his complaint and complete the record, such claims are accordingly dismissed. See 28 U.S.C. § 1915A(b); Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).

H. **Conspiracy**

Summary judgment is also granted as to plaintiff's allegations of a conspiracy between the defendants to violate his constitutional rights. Plaintiff alleges that Detective Failla "engaged and conspired with an assistant district attorney[,] Frank Degaetano[,] to deny plaintiff Equal Protection of the Law by utilizing a 'policy' of no arrest of certain individuals situated such as this plaintiff where a particular case involves a 'cross-complaint,' thereby making defendant Frank Degaetano liable." The complaint alleges nothing further about Degaetano's role in the alleged conspiracy or any specific acts he allegedly committed. Plaintiff also alleges that Detective Failla "conspired with other police officers (John Doe's) to deny plaintiff his First Amendment right (Freedom of Speech) and to have been free from false arrest and false imprisonment . . . ."

First, plaintiff cannot demonstrate a conspiracy to violate his constitutional rights where the Court has already found that no constitutional violation has occurred. Anemone v. Metropolitan Transp. Authority, 629 F.3d 97, 121 (2d Cir. 2011) ("[H]aving found that none of the individual Defendants in this case violated Plaintiff's constitutional rights, we need not decide whether they can properly be charged with conspiring to violate these rights under § 1983."). Second, plaintiff's allegations are conclusory, and summary judgment is proper on that ground. See Ciambello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002) ("'[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct.'" (quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993))).

Finally, to the extent plaintiff alleges a conspiracy between fellow officers of the NYPD, such a claim is barred by the intra-corporate conspiracy doctrine. See Talley v. Brentwood Union Free School Dist., 728 F.Supp.2d 226 (E.D.N.Y. 2010) ("Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring together." (citing Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978)); Rodriguez v. City of New York, No. 05 Civ. 5117(JFB), 2008 WL 420015, at *25 (E.D.N.Y. Feb.11, 2005) (dismissing conspiracy claim where all parties to conspiracy part of NYPD).[5] Accordingly, plaintiff's conspiracy claims are dismissed.

---

[5] The same is not necessarily true of the alleged conspiracy between Detective Failla and ADA Degaetano. The Court has found no binding authority on the subject; however, in Dunlop v. City of New York, No. 06 Civ. 0433(RJS), 2008 WL 1970002 (S.D.N.Y. May 06, 2008), the court was "unable to conclude . . . that the [New York

### I.  Absolute Immunity

To the extent plaintiff could make out any claim against ADA Degaetano, he is entitled to absolute immunity in so far as his actions were confined to preparing and presenting his case. Prosecutors are absolutely immune from suit for acts that are "intimately associated with the judicial phase of the criminal process." Warney v. Monroe Cnty., 587 F.3d 113, 121 (2d Cir. 2009); see also Van de Kamp v. Goldstein, 129 S.Ct. 855, 861-62 (2009). Such immunity does not extend to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." Warney, 587 F.3d at 121. Here, it is not clear what actions Degaetano allegedly took that plaintiff contends violated his constitutional rights. However, to the extent those actions were confined to preparing and presenting the case against plaintiff, Degaetano is immune from suit.

### J.  Qualified Immunity

Even if the defendants actions in fact violated plaintiff's constitutional rights, they are protected by the doctrine of qualified immunity. "In general, public officials are entitled to qualified immunity if (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe their acts did not violate those rights." Holcomb v. Lykens, 337 F.3d 217, 220 (2d Cir. 2003) (quoting Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996)). A police officer has acted in an unreasonable manner where "no officer of reasonable competence could have made the same choice in similar circumstances." Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997). That is, defendants are entitled to qualified immunity if "officers of reasonable competence could disagree" as to the legality of their action. Malley v. Briggs, 475 U.S. 335, 341 (1986).

---

County District Attorney's Office] and the NYPD constitute a single municipal entity" for purposes of the intra-corporate conspiracy doctrine. Id. at *14.

As noted above, defendants are entitled to summary judgment, as their actions did not violate the plaintiff's constitutional rights. However, even if plaintiff could arguably make out a claim of a constitutional violation, it was objectively reasonable for the officers to believe that their actions were legal. Accordingly, summary judgment is merited under the doctrine of qualified immunity.

### IV.  Claims Against the City of New York

Plaintiff does not name the City of New York as a defendant. However, to the extent the Court could interpret plaintiff's claims against "New York City Police Officers ('Dept')" as claims against the City of New York, plaintiff's allegations fail to satisfy the requirements of Monell v. New York City Dep't of Social Servs., 436 U.S. 658 (1978). In order to sustain a claim for relief under 42 U.S.C. § 1983 against a municipal defendant such as the City of New York, a plaintiff must show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. Board of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 403 (1997). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker." City of Oklahoma v. Turtle, 471 U.S. 808, 823-24 (1985).

The complaint does not allege sufficient facts showing proof of a policy or custom that caused the alleged constitutional injury. The only proof cited by the plaintiff aside from his allegations about the incident itself is an article published in the New York Daily News on May 7, 2009. Plaintiff would appear to be referring to one of two articles: The first, titled "NYPD's frisk card plan is 'garbage,' cop group says," discusses New York's stop and frisk policy, which

20

is not at issue in this case; the second, titled "Justice may be 'blond' in dirty-narcs case," discusses a corrupt narcotics informant. The second article's relevance is, again, not apparent, as it does not discuss any policy or practice at issue in this case.[6] Accordingly, to the extent plaintiff intends to raise a claim against the City of New York, such a claim is dismissed.

## V.  State Law Claims

Although plaintiff appears to raise only federal law constitutional claims, the Court will briefly consider whether any analogous state law claims survive defendant's motion for summary judgment. For the reasons stated below, they do not.

### A.  Failure to File Notice of Claim

New York General Municipal Law § 50-e requires an individual to file a notice of claim with the New York City Comptroller before commencing any action for damages against New York City or its employees. N.Y. Gen. Mun. Law § 50-e. This statute provides that:

> In any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, . . . or any officer, appointee or employee thereof, the notice of claim shall comply with and be served in accordance with the provisions of this section within ninety days after the claim arises.

Id. §50-e(1)(a). "The notice of claim requirements apply equally to state tort claims brought as pendent claims in a federal civil rights action." Fincher v. County of Westchester, 979 F. Supp. 989, 1002 (S.D.N.Y. 1997).

---

[6] Nor is it clear that the Court should even consider such articles at this stage. Delrosario v. City of New York, No. 07 Civ. 2027(RJS), 2010 WL 882990, at *7 (S.D.N.Y. March 4, 2010) (declining to consider newspaper articles on motion for summary judgment as, "[n]ewspaper articles are hearsay when introduced to prove the truth of the matter asserted, and also must not be admitted."); Gonzalez v. City of New York, 354 F. Supp. 2d 327, 347 n. 29 (S.D.N.Y. 2005) (finding newspaper articles offered in support of plaintiffs' pattern and practice claims to be "inadmissible hearsay and unusable to defeat summary judgment"); Griffin v. City of New York, 287 F. Supp. 2d 392, 395 n. 8 (S.D.N.Y. 2003); Ladner v. City of New York, 20 F. Supp. 2d 509, 519 (E.D.N.Y. 1998) ("[N]ewspaper article[s] [are] inadmissible hearsay and unusable to defeat summary judgment.").

Filing a notice of claim is a mandatory condition precedent to suit against New York City and its employees; see Day v. Moscow, 955 F.2d 807, 813 (2d Cir. 1992), and failure to comply with this condition is grounds for dismissing an action. See Garcia v. NYPD Pct 41, 95 CV 10471, 1997 WL 563809, at *3-4 (S.D.N.Y. Sept. 10, 1997) (dismissing plaintiff's state law claims of malicious prosecution and false arrest against New York City and its employees due to plaintiff's failure to comply with N.Y. Gen. Mun. Law § 50-e); see also Bankhead v. Chu, 10 CV 0510, 2010 WL 935371, at *2 (E.D.N.Y. Mar. 11, 2010) (dismissing plaintiff's state law claims of malicious prosecution and false arrest against New York City for failure to allege service of a notice of claim on the City of New York pursuant N.Y. Gen. Mun. Law § 50-e); Jean v. City of New York, 98 CV 157, 2009 WL 3459469, at *10 (E.D.N.Y.,Oct. 28, 2009) (dismissing plaintiff's pendant state law claims of false arrest, false imprisonment and malicious prosecution against a New York City police officer as procedurally barred for plaintiff's failure to file a notice of claim for any of these claims). The time in which plaintiff might have been entitled to file a late notice of claim has already passed. See N.Y. Gen. Mun. Law § 50-e(5). Here, plaintiff does not allege that he filed a notice of claim pursuant to New York General Municipal Law § 50 and he presents no evidence indicating that a notice of claim was filed. Thus, any state law claims fail on this ground.[7]

B. **Supplemental Jurisdiction**

Finally, defendant argues that the Court should not exercise supplemental jurisdiction. "In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998). To the extent any

---

[7] Plaintiff argues that his failure to file a notice of claim does not prevent him from seeking to vindicate the alleged violation of his federal constitutional rights. Defendants do not argue to the contrary.

of plaintiff's state law claims would otherwise survive summary judgment, the Court declines to exercise supplemental jurisdiction in the absence of any viable federal law claim.

## VI. Conclusion

For the foregoing reasons, defendants' motion for summary judgment is granted. The Clerk of the Court is directed to enter judgment and to close the case.

SO ORDERED.

Dated: Brooklyn, New York
March 28 , 2011

/S/

Carol Bagley Amon /
United States District Judge

Copy mailed to:
Jean C. Cantave
Inmate No. 08 A 4012
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562-5442